# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RISEDELAWARE INC., KAREN PETERSON, and THOMAS PENOZA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N22C-09-526 CLS |
| SECRETARY CLAIRE DEMATTEIS in her official capacity as Secretary of Delaware Department of Human Resources and Co-Chair of the State Employee Benefits Committee, DIRECTOR CERRON CADE in his official capacity as Director of the Delaware Office of Management and Budget and CO-Chair of the State Employee Benefits Committee, DELAWARE DEPARTMENT OF HUMAN RESOURCES, DELAWARE STATE EMPLOYEE BENEFITS COMMITTEE, and DELAWARE DIVISION OF STATEWIDE BENEFITS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Date Submitted: October 17, 2022
Date Decided:  October 19, 2022

*Upon Plaintiffs' Motion for Stay of the Requirement All State Retirees Holding Medicare Supplemental Health Plans to Use Medicare Advantage*. **GRANTED.**

1

## ORDER

David A. Felice, Esquire, Bailey & Glasser, LLP, Wilmington, Delaware, 19808, Attorney for Plaintiffs.

Steve Cohen, Esquire, and Sara Haviva Mark, Esquire, Bailey & Glasser, LLP, New York, New York, 10006, Attorneys for Plaintiffs.

Jacob S. Gardener, Esquire, Walden Macht & Haran LLP, New York, New York, 10281, Attorney for Plaintiffs

Patricia A. Davis, Esquire, Adria Martinelli, Esquire, and Jennifer Singh, Esquire, Delaware Department of Justice, Wilmington, Delaware, 19801, Attorney for Defendants.

**SCOTT, J.**

### INTRODUCTION

Upon consideration of Plaintiffs RiseDelaware, Inc., Karen Peterson, and Thomas Penoza's ("Plaintiffs") Motion and Brief for Stay Pending Court decision upon Delaware State Employee Benefits Committee ("SEBC") decision to require all State retirees holding Medicare Supplemental Health Plans to switch to Medicare Advantage and Defendants'[1] Answering Brief in Opposition, Plaintiffs' Reply, the record in this case, and oral argument, the Motion for Stay is **GRANTED.**

---

[1] Secretary Claire DeMatteis, in her official capacity as Secretary of Delaware Department of Human Resources and Co-Chair of the State Employee Benefits Committee, Director Cerron Cade, in his official capacity as Director of the

2

## BACKGROUND

Plaintiffs move to stay the policy decision of SEBC decision to require all State retirees holding Medicare Supplemental Health Plans to switch to Medicare Advantage. On February 28, 2022, SEBC held a public meeting. According to the agenda for this meeting, the fourth matter to be addressed was "2021 Health Third Party Administrative Services RFP Award Recommendations."[2] According to the February 28, 2022 meeting minutes, it seems as if the members of SEBC were selecting a carrier for Medicare coverage for retirees to start on January 1, 2023. Page three of the minutes indicates Director Cade believed there would not be material changes to the plan, if the SEBC switched retirees to Medicare Advantage. A motion was adopted unanimously to move all State retirees to a Medicare Advantage plan administered by Highmark, effective January 1, 2023. At the time of the adoption to move all State retirees to Medicare Advantage, no contract was negotiated with Highmark. The terms of the Medicare Advantage plan were unknown as no contract yet existed.

---

Delaware Office of Management and Budget and Co-Chair of the State Employee Benefits Committee, Delaware Department of Human Recourses, Delaware State Employee Benefits Committee, and Delaware Division of Statewide Benefits.
[2] Defendants' Answering Brief curiously left out the reference to 2021. Def. Answ. Br., E-File 68238809, at 7.

SEBC met on April 25, 2022. The agenda for this meeting referred to "Medicare Advantage with and without Prescription Coverage Plan Options." According to the April 25, 2022 minutes, Director Faith Rentz stated, "At the February 28th meeting, the Committee approved the rates for the Medicare pensioner plan options and those proposed options were voted on to replace the current plans in place today. At the March 14th meeting, the Committee approved the implementation of the Medicare Advantage plan for the January 1, 2023 plan year." At the April meeting, a motion was adopted to approve Medicare Advantage plan with prescription as the only Medicare pensioner option. Additionally, Plaintiffs allege Director Cade on September 12, 2022 stated the Medicare Advantage plan "was not adopted in February but voted on in early June." This Court has looked at the public minutes for SEBC's meetings. Nothing contained in the minutes indicates the Medicare Advantage plan was voted on in early June, in fact there was no public meeting in early June.

On June 1, 2022, the Statewide Benefits Office and Office of Pensions sent out a standard letter to all Medicare-eligible retirees. According to the letter, "The State of Delaware will transition medical plan coverage from the current Special Medicfill Medicare Supplement Plan to Freedom Blue PPO, a Medicare Advantage Plan (also known as a Medicare Part C plan) administered by Highmark Blue Cross

4

Blue Shield Delaware, for coverage to begin January 1, 2023." Additionally,

Medicare-eligible retirees were reassured the switch was beneficial because

> 1. The monthly cost of the Medicare Advantage Plan is less than half of the current cost while providing the same level of medical plan benefits as the Special Medicfill plan it replaces.
>
> 2. The Medicare Advantage Plan offers exceptional service through an expanded concierge service team and additional benefits, such as Silver Sneakers and at home meals following discharge from a hospitalization.
>
> 3. The Medicare Advantage Plan offers a simplified process because you no longer need to carry your Medicare card in addition to your Highmark medical plan ID card.
>
> 4. There will be no change to your prescription coverage as SilverScript, the State of Delaware Medicare Part D prescription drug coverage administered by CVS Caremark, will continue as our pharmacy plan for all Medicare retirees.

The Court has concern with the promise of "providing the same level of medical plan benefits" as the policy retirees currently hold without an executed contract as to those medical plan benefits. Defendants have conceded the contract with Highmark was not executed until September 28, 2022. A copy of the contract to provide Medicare Advantage to retirees can be found on the State's Website.[3] It is unclear to this Court how accurate information may be given to retirees about their new medical benefits without a contract in place. In fact, no SEBC meeting minutes mentioned prior authorization or the use of in-network doctors in connection with

---

[3] Delaware Department of Human Resources, *Health Plan-Highmark BCBS Medicare Advantage*, https://dhr.delaware.gov/benefits/medicare/medicare-advantage.shtml (last visited, Oct. 18, 2022).

Medicare Advantage until August 22, 2022, just one month before the contract was executed.

Two days after the execution of the contract, the State updated information on its website providing an 11-page document labeled "Frequently Asked Questions" ("FAQs") under its information tab in Medicare Benefits explaining this shift in health care coverage to Medicare Advantage. The FAQs document explained the policy requires State retirees to enroll in a Medicare Advantage plan with prescription or lose their State-funded health insurance. It is undisputed that the Medicare Advantage plan is substantially different from retirees current State-funded health insurance as the Medicare Advantage plan will require prior authorization for significantly more procedures and will require retirees to find in-network doctors to avoid paying out-of-pocket costs for care. The FAQs is the first document made available to retirees to refer to prior authorization. Even though the contract was signed on September 28, 2022, and was to be effective as of January 1, 2023, the contract maintains a 30-page list of procedures or imaging which require prior authorization to be effective October 1, 2022. Then, on October 12, 2022, 13 days after this action was filed, retirees were made aware of the prior authorization overview as a document was available on the State's website labeled, Highmark Blue Cross Blue Shield of Delaware Freedom Blue Medicare Advantage PPO Prior Authorization Overview. It appears to this Court the first time in which a reasonable

person would have notice of the prior authorization component and the use of only in-network providers of the Medicare Advantage plan was September 30, 2022.

Plaintiffs filed a Complaint asking for Declaratory Judgment, as well as this Motion to Stay on September 29, 2022. Plaintiffs and Defendants agreed to a briefing schedule and oral argument date. Briefs for Plaintiffs and Defendants, as well as Plaintiffs' reply on the Motion to Stay were received and reviewed by this Court.

## STANDARD OF REVIEW

Enforcement of an agency's decision may be stayed by this Court "only if it finds, upon a preliminary hearing, that the issues and facts presented for review are substantial and the stay is required to prevent irreparable harm."[4] In analyzing this question, the Court balances all of the equities together; the Court balances the likelihood of the appellant being successful on appeal; whether the appellant will suffer irreparable harm; and whether any other interested party or the public will be harmed.[5] "Moreover, 'simply outlining the issue before the Court' is not enough to

---

[4] 29 Del. C. § 10144.
[5] *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357–59 (Del. 1998).

establish a 'substantial issue[.]' "[6] In terms of demonstrating irreparable harm, Plaintiffs must present evidence that the alleged harms they claim they will suffer, will actually occur. Speculative harm does not serve as a basis for irreparable harm.[7] Accordingly, this Court held a preliminary hearing on October 17, 2022.

## ANALYSIS

### *This Court has Authority to Render Stay*

Defendants argue this Court does not have the authority to render a stay in this case. The language of 29 Del. C. § 10144 makes clear this Court's authority to render a stay if the decision of the SEBC is considered a regulation under the Delaware Administrative Procedures Act ("APA"). According to the APA, a regulation is, in relevant language, "any statement of law, procedure, policy, right, requirement or prohibition formulated and promulgated by an agency as a rule or standard, or as a guide for the decision of cases thereafter by it or by any other agency, authority or court." Here, SEBC, under its authority under 21 Del. C. § 9602 and 21 Del. C. § 5210, enacted a policy requiring retirees to move from their State-subsidized Medicare Plan to Medicare Advantage plan or stay with traditional

---

[6] *Dept. of Transp. v. Keeley*, 2018 WL 4352855, at *3 (Del. Super. Sept. 11, 2018) (quoting *Dept. of Transp. v. Keeler*, 2010 WL 334920, at *1 (Del. Super. Jan. 28, 2010)).

[7] *Keeler*, 2010 WL 334920, at *2 (citing *Liselyn Enter. v. Brady*, 1989 WL 100399, at *2 (Del. Super.)).

8

Medicare and give up their State-subsidized benefits. Therefore, such policy change is a regulation under the APA. This Court rejects Defendants' argument against APA application using *Free-Flow*[8] to bolster their argument. *Free-Flow* stands for where there is specific statutory directive, an agency may operate outside the requirements of the APA.[9] Relying on *Free-Flow*, Defendants contend that the language giving SEBC the power to make this decision is not a regulation subject to the APA, but rather the implementation of a specific and detailed directive that is not subject to the same formal comment and review requirements. Specifically, Defendants argue 21 Del. C. § 9602 and 21 Del. C. § 5210 that authorized SEBC to change retirees' healthcare plans without following the formal APA requirements. The Court finds otherwise. Here, there is no specific statutory directive for SEBC to force all retirees from their State-subsidized benefits to a Medicare Advantage plan or lose benefits. Therefore, *Free-Flow* does not apply.

### *Plaintiffs Likelihood of Success on Merits and Imminent Harm*

Because this Court has the authority to grant a stay over implementation of a regulation under the APA, the Court may now assess the merits of Plaintiffs' arguments for such stay. Plaintiffs have provided the Court with sufficient

---

[8] *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233 (Del. 2004)
[9] *Id.* at 1236.

information to assess their likelihood of success on their claims that SEBC improperly implemented a policy change. Specifically, that Defendant's conduct violates the APA. Plaintiffs allege, with specification, that based on the substantial right, retirees' State benefits, and procedural deficiencies in adoption of the new policy, the Plaintiff will likely be successful in their action because the procedural safeguards of the APA were ignored in implementation of this regulation.

Additionally, Plaintiffs also make a clear showing that retirees were unaware of the terms of the Medicare Advantage policy until the time of the signing of the healthcare contract with Highmark on September 28, 2022, or at the earliest the August 22, 2022, SEBC meeting. The Court notes there was no indication coverage would change, in fact, retirees were assured just a few months ago that their coverage under Medicare Advantage would provide "the same level of medical plan benefits as the Special Medicfill plan it replaces." This Court cannot agree with the sentiment that the need for prior authorizations for over 1,000 procedures and the use of only in-network doctors is the same level of benefits retirees obtained with the current policy. Despite Defendants belief that SEBC knew about the prior authorization component to the Medicare Advantage plan, from the record and minute meetings of SEBC it does not appear SEBC knew prior authorizations were contained in the Medicare Advantage plan until the August 22, 2022, meeting, just a month before entering into agreement with Highmark. To this point, Director Faith Rentz reported

10

the Medicare Advantage Plan would require prior authorization for "some services." While the Court is not in the shoes of Director Faith Rentz, it seems as if the contract between Highmark had not even entered its final stages of negotiation on August 22, 2022, as certainly a reasonable person could not confuse "some" services with over 1,000 services Highmark requires prior authorizations for. Notice to retirees seemingly occurred August 22, 2022, at the earliest, therefore, Plaintiffs have filed this action within the limitations prescribed by the Delaware Freedom of Information Act.[10]

Plaintiffs also contends that they, as well as other retirees, present and future, will suffer irreparable harm if a stay is not granted, because without a stay, the Plaintiffs will be forced to change their health insurance coverage. The Court agrees that if the stay is not granted, Plaintiffs will be substantially harmed by the denial of

---

[10] Defendants have suggested the only remedy available to Plaintiffs was a Freedom of Information Act violation of the validity of SEBC's action and Plaintiffs are time-barred as six months has elapsed since the February 28, 2022. 29 Del. C. § 10005 requires Plaintiffs to contest the alleged violations of Delaware Freedom of Information Act, in the Court of Chancery, within 60 days of learning of such action, but in no event later than six months after the date of the action. The date of action is when retirees knew or should have been expected to know about the terms of the contract because no reasonable person would be expected to contest action of a public body relating to terms of a contract of a contract in which was not discussed nor executed. Additionally, under 10 Del. C. § 1902, no civil action brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter and if the action is transferred to the appropriate court, Plaintiffs' original filing date in this Court will be considered the date Plaintiffs brought the action in Court of Chancery.

the stay because the deadline for switching benefits through Open Enrollment is October 24, 2022. This means retirees will be forced to enroll in the new Medicare Advantage plan or stay with traditional Medicare and give up their State-subsidized benefits within the next few days for such decision to become effective on January 1, 2023. Accordingly, Plaintiffs will suffer irreparable harm without a stay as their government benefit, to which these individuals have a reasonable expectation of continuation, is at stake. Additionally, this Court recognizes irreparable harm in Plaintiffs and other retirees being denied a statutorily protected right to review or comment on proposed agency action before its implementation.[11]

Finally, as required when balancing the harms in determining irreparable harm, the Court addresses the issue of whether Defendants or the public will be harmed by the order for stay being granted. Since retirees were the only target of this policy change, the policy roughly effects approximately 30,000 individuals. There is no evidence that the public would be harmed by a stay as it effects a small

---

[11] See, *Blue Cross & Blue Shield v. Elliott*, 1977 WL 23810, at *1 (Del. Ch. Apr. 13, 1977) (Where this Court stayed an order directing Blue Cross to "reduce proposed weighted average rate increased" based on irreparable harm from deficiencies in notice of hearings leading to the decision.") See also, *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, 2022 WL 2960031, at *11 (W.D. La. July 26, 2022) (Using the same standards this Court adopts to evaluate irreparable harm, the court found "Being deprived of a procedural right to protect its concrete interests [by violation of the APA's notice and comment requirements] is irreparable injury.")

percentage of Delawareans. It is not clear from Defendants' Answering Brief that Defendants will suffer any significant harm in granting the stay. Therefore, the harm to Plaintiffs far outweighs the harm to Defendants and the public.

## CONCLUSION

The Court finds that Plaintiffs have shown that the issues before this Court are substantial and that they will suffer irreparable harm. Accordingly, after balancing the required factors, Plaintiffs' Motion for Stay of the Requirement All State Retirees Holding Medicare Supplemental Health Plans to Use Medicare Advantage is **GRANTED.**

Defendants' implementation of a Medicare Advantage Plan for State retirees and acceptance of enrollment into the Plan, including by way of automatic enrollment in the open enrollment period currently in effect for State retirees is stayed until further Order by this Court.

During the stay, Defendants shall take all necessary and proper steps to ensure that the healthcare insurance and benefits available to State retirees prior to October 3, 2022, or in which they were enrolled prior to that time, remain in full force and effect.

A final trial on the merits, subject to the availability of the Court and the parties, will be scheduled as soon as possible, where the Court will make a final determination of facts.

**IT IS SO ORDERED.**

_Calvin L. Scott Jr_

**Judge Calvin L. Scott, Jr.**